DECISION
 IN MANDAMUS ON OBJECTIONS TO MAGISTRATE'S DECISION {¶ 1} In this original action, relator, Lear Operations Corporation ("relator"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding permanent total disability ("PTD") compensation to respondent Dawn E. Crispen ("claimant"), and to enter an order denying *Page 2 
said compensation. In the alternative, relator requests that the writ order the commission to vacate its 100 percent allocation of the award to the 1998 claim, and to allocate the award between the 1988 and 1998 claim.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision (attached as Appendix A), including findings of fact and conclusions of law. Therein, the magistrate concluded the staff hearing officer's ("SHO") order of August 28, 2006, is seriously flawed by reliance upon medical opinions contained in the report of Carolyn Markle, the vocational evaluator, that Markle is not competent to render. Therefore, the magistrate recommended that this court issue a writ of mandamus ordering the commission to redo the nonmedical analysis.
 {¶ 3} Claimant filed the following two objections to the magistrate's decision:
 1. The magistrate erred in finding that the Industrial Commission abused its discretion in relying upon the vocational evaluation of Carolyn Markle, MRC, CRC.
 2. The magistrate erred in finding that the Industrial Commission abused its discretion in ordering payment of permanent total disability benefits to begin January 5, 2006.
 {¶ 4} Relator filed objections, indicating that it agrees with the magistrate's decision, but asks that in the event this court rejects the magistrate's recommendation, the allocation issue raised by relator be considered ripe for review and that a decision be rendered.
 {¶ 5} With respect to claimant's objections, these arguments are essentially the same as those made to, and addressed by, the magistrate. For the reasons set forth in the magistrate's decision, we do not find claimant's position well-taken. Following an *Page 3 
independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Accordingly, claimant's objections to the magistrate's decision are overruled. Given our disposition of claimant's objections, relator's objection is rendered moot.
 {¶ 6} Therefore, claimant's objections to the magistrate's decision are overruled, relator's objection to the magistrate's decision is rendered moot, and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we issue a writ of mandamus ordering the commission to vacate its SHO's order of August 28, 2006, awarding PTD compensation and, in a manner consistent with the magistrate's decision, enter a new order that adjudicates the PTD application.
Objections overruled; writ granted.
 BRYANT and BROWN, JJ., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION Rendered on June 25, 2008. IN MANDAMUS {¶ 7} In this original action, relator, Lear Operations Corporation ("relator" or "Lear"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding permanent total disability ("PTD") compensation to respondent Dawn E. Crispen ("claimant"), and to enter an order denying *Page 5 
said compensation. In the alternative, relator requests that the writ order the commission to vacate its 100 percent allocation of the award to the 1998 claim, and to allocate the award between the 1988 and 1998 claim.
Findings of Fact: {¶ 8} 1. Claimant has two industrial claims.
 {¶ 9} 2. On January 27, 1988, claimant sustained an industrial injury while employed as a "material handler" for Capitol Plastics of Ohio, Inc., a state-fund employer. The industrial claim (No. 88-27065) is allowed for:
 * * * Pain entire back (724.5) and right knee (719.46); pain and swelling, left knee (729.81) (BWC 9/23/88); contusion of right knee (924.11); sprain, lumbar region (847.2); sprain of neck (847.0); sprain of shoulder/arm, not otherwise specified (840.9); sprain, thoracic region (847.1); contusion of back (922.3); backache, not otherwise specified (724.5); joint pain, left leg (719.46); sprain of right knee and leg, not otherwise specified (844.9); lumbago (724.2); swelling of left limb (729.81) (SHO 11/19/96).
 {¶ 10} 3. Apparently, after the January 27, 1988 industrial injury, Lear, a self-insured employer, purchased Capitol Plastics of Ohio, Inc.
 {¶ 11} 4. On November 30, 1998, claimant sustained an industrial injury while employed as a "material handler" for Lear. That industrial claim (No. 98-615552) is allowed for:
 * * * Cervical sprain/strain, aggravation of pre-existing de generative disc disease at L5-S1 and right sciatica; aggravation of pre-existing pain disorder associated with both psychological factors and a general medical condition (307.89); aggravation of pre-existing dysthymia (300.40).
 {¶ 12} 5. On November 30, 2005, treating psychologist Marcia Ward, Ph.D., wrote: *Page 6 
 * * * Given the likelihood that she will be unable to find lasting relief for her significant and ever present physical pain it is my opinion that she will struggle with depressive symptoms into the foreseeable future. As such[,] I would have to offer the opinion that her depressive symptoms will render her permanently disabled only in the sense that they are directly related to her chronic physical pain.
 {¶ 13} 6. In late November 2005, the Ohio Bureau of Workers' Compensation ("bureau") referred claimant for a vocational evaluation to be performed by Goodwill Industries of Northwest Ohio, Inc. ("Goodwill"). The Goodwill vocational evaluator was Carolyn Markle who issued a report to the bureau dated January 5, 2006.
 {¶ 14} 7. On the front side of her multi-page report, Markle offers the following opinion:
 Overall, Dawn demonstrated an inability to attend on a regular and reliable basis due to her reported back pain-"too sore to move today". Therefore, it is the professional opinion of this evaluator she is unemployable at this time due to her inability to attend on a regular basis due to her reported physical pain. Considering her physical pain and the economy[,] the only recommendation would be to "volunteer" somewhere they will allow for her inconsistent attendance.
The Markle report further states:
 Ms. Dawn Crispen was referred to Goodwill Industries for a vocational evaluation to include a transferable skills analysis. To aid in this assessment, Dawn completed interest checklists, research, academic achievement tests, work samples, aptitude tests, and a transferable skills analysis using the OASYS program.
 Dawn['s] interest checklists and research results indicate she is interested in caring for children or in "arts and crafts" occupations. For example, she listed the following occupations as her "top ten" choices: Child attendant, Nursery school attendant, Child monitor, Child care attendant, Quilting machine operator, Quilting, Cigar making, Weaver-bench loom, Weaver, and Knitting machine operator. How *Page 7 
 ever, her physical limitations would "restrict" her abilities to physically care for children.
 Work sample and aptitude testing results indicate Dawn is capable of learning and executing clerical tasks such as entry-level computer applications, use codes for needed information, compare number sequences from two separate sources and change as necessary, and use an electronic calculator to add columns of numbers. Dawn exhibited the ability to visually compare and properly select a series from abstract designs.
 Dawn exhibited the ability to follow instructions given verbally as well as written. She also demonstrated "average" ability to use "good judgment" to solve problems as they occur on a daily basis. It should be noted at this time on an aptitude test that measures ability to invent or discover a solutions to a problem (Ingenuity subtest of the Flanagan Aptitude Classification Tests), Dawn was unable to complete all of the problems. She did complete six of them with five correct in about 30 minutes time before reporting she could not do them.
 A Transferable Skills Analysis using the OASYS program was completed. It produced "no matches" for any of the four search systems available. This indicates a need for training to become marketable in the competitive workforce.
 Dawn's work behaviors were within competitive standards except for her attendance and ability to sit for two hours without standing. Due to her physical limitations[,] Dawn (and a medical report) reported a need for alternating sitting and standing as needed. In addition, she called off "because my back is too sore to move" two days (every other day) of the week she was scheduled for a Vocational Evaluation. This attendance is "well below" requirements for competitive employment.
 Overall, Dawn's skills indicate she should be able to work as an office support staff. Her physical limitations (limited lifting and carrying and alternating sitting and standing) restrict her abilities to work with children. However, her demonstrated inability to attend suggest she is unable to attend on a reliable basis.
 Therefore, it is the professional opinion of this evaluator Ms. Dawn Crispen is unemployable at this time in competitive *Page 8 
employment and no recommendations are suggested. However, Dawn should be able to do volunteer work within her restrictions.
(Emphases sic.)
 {¶ 15} 8. On February 10, 2006, claimant filed an application for PTD compensation. In support, claimant submitted the November 30, 2005 report of Dr. Ward.
 {¶ 16} 9. On March 20, 2006, at Lear's request, claimant was examined by orthopedic surgeon S.S. Purewal, M.D., for the allowed physical conditions of both industrial claims. Dr. Purewal reported:
 DISCUSSION AND OPINION: Based on the above evaluation of this patient and review of her medical records, it is my opinion that Ms. Crispen is not permanently and totally disabled as a result of the allowed nonpsychiatric conditions under the two claims discussed above.
 Considering the allowed conditions, it is my opinion that she should be able to work in a job that requires lifting no more than 20 pounds frequently, but she will not be able to perform any repetitive bending or stooping or any reaching or lifting from below the level of her knees.
 {¶ 17} 10. On April 5, 2006, at Lear's request, claimant was examined by psychiatrist Richard H. Clary, M.D., who reported:
 In my medical opinion, her psychiatric conditions are not work prohibitive and do not cause permanent total disability. In my medical opinion, her psychiatric conditions do not cause any restrictions or limitations in her ability to work.
 {¶ 18} 11. On May 3, 2006, at the commission's request, claimant was examined by Harvey A. Popovich, M.D., for the allowed physical conditions of both industrial claims. In his narrative report, Dr. Popovich opined that claimant has "20% whole person permanent partial impairment." *Page 9 
 {¶ 19} 12. On May 3, 2006, Dr. Popovich also completed a physical strength rating form on which he opined that claimant is capable of sedentary work.
 {¶ 20} 13. Following an August 28, 2006 hearing, a staff hearing officer ("SHO") issued an order granting PTD compensation beginning January 5, 2006, the date of the Markle report. The SHO's order explains:
 Permanent and Total Disability Compensation is hereby awarded from 1/5/2006 * * * through 8/28/2006, and is to continue thereafter without suspension unless future facts or circumstances should warrant the stopping of the award; and that payment be made pursuant to Ohio Revised Code Section 4123.58(A).
 All medical reports and evidence contained in the Industrial Commission file, as well as the evidence and arguments presented at hearing, were reviewed, considered and evaluated. This order is based particularly upon the reports of Harvey A. Popovich, M.D. (5/3/06), Donald J. Tosi, Ph.D. (5/10/06), and Richard H. Clary, M.D. (4/5/06), as well as the various progress notes and narrative reports from Gregory M. Thomas, M.D. (from 3/12/97 through 7/13/06), and the Vocational Evaluation Report of Carolyn Markle, MRC, CRC (12/02/05).
 The Injured Worker's first industrial injury (claim number 88-27065) occurred on 1/27/1988, while she was working as a material handler for the Lear Corporation. She had worked for Lear Corporation, and it's predecessor, Capitol Plastics of Ohio, Inc., since 1972. On 1/27/1988, she stepped into an open drain, which was covered with snow. She fell into the drain up to the level of her chest. She was initially treated by her Primary Care Physician, Dr. Rhinehart. She missed work, off and on, for a period of approximately three months. This claim was only allowed for contusions, pain, swelling and soft-tissue injuries. The Injured Worker did not have any surgery under claim number 88-27065. She has previously been determined to have an 8% Permanent Partial Disability due to the residuals of the allowed conditions in claim number 88-27065.
 The Injured Worker's second industrial injury (claim number 98-615552) occurred on 11/30/1998, while she was working *Page 10 
 as a material handler for Lear Corporation. She was picking plastic tubs off of the floor when some material spilled. She bent over to pick up the spilled material and moved a basket that weighed only 10 to 15 pounds. However, she felt a "snap" in her back with a "popping" sensation in the neck and right shoulder region. She was initially seen in the emergency room at Wood County Hospital, on 11/30/1998. She was subsequently treated by Gregory M. Thomas, M.D., a physical medicine and rehabilitation specialist. Diagnostic studies revealed Degenerative Disc Disease at the L5-S1 level. This claim was expanded to include an Aggravation of Pre-Existing Disc Disease at the L5-S1 level, and the Injured Worker underwent surgery, on 4/30/1999, by Edmund P. Lawrence, Jr., M.D. The surgery initially improved her condition and she was able to return to work, performing her usual job activities, approximately six weeks later. Her condition deteriorated, however, and she has not worked since 11/27/2001. This claim was also expanded to include psychological conditions, an aggravation of pre-existing pain disorder associated with both psychological factors and a general medical condition, as well as an aggravation of preexisting dysthymia, pursuant to the Industrial Commission order of 9/24/2003.
 The Injured Worker currently has a constant burning, throbbing pain in her cervical area, as well as constant sharp pain in her low back, which radiates down both legs.
 In support of her IC-2 Application for Compensation for Permanent Total Disability, filed 2/10/2006, the Injured Worker submitted the 11/20/2005 narrative report of Marsha Ward, Ph.D. However, this Staff Hearing Officer does not find the opinion of Dr. Ward to be persuasive, in light of the reports of Donald J. Tosi, Ph.D., dated 5/10/2006, and Richard H. Clary, M.D., dated 4/5/2006.
 The Injured Worker was examined by Donald J. Tosi, Ph.D., on 5/10/2006. He then stated his professional psychological opinion that, "The Injured Worker is able to return to her former position of employment, without restrictions." He further stated that, based solely on the impairment resulting from the allowed mental/behavior conditions allowed in this claim, and with no consideration of the Injured Worker's age, education, or work training, "This Injured Worker has no work limitations." *Page 11 
 Dr. Tosi's opinion was corroborated by the 4/5/2006 report of Richard H. Clary, M.D. Dr. Clary stated his professional psychiatric opinion that, "In my medical opinion, her psychiatric conditions are not work prohibitive and do not cause permanent total disability. In my medical opinion, her psychiatric conditions do not cause any restrictions or limitations in her ability to work."
 This Staff Hearing Officer finds the opinions of Donald J. Tosi, Ph.D. and Richard H. Cleary, M.D., to be persuasive. Therefore, it is the finding of this Staff Hearing Officer that Injured Worker's allowed psychological conditions do not prevent the Injured Worker from returning to her former position of employment.
 Therefore, after hearing, this Adjudicator finds that the Injured Worker is medically able to return to her former position of employment, when considering only the allowed psychiatric conditions in this claim. Therefore, the Injured Worker shall be, and hereby is, found not to be Permanently and Totally Disabled, due to the allowed psychiatric conditions in this claim, pursuant to Industrial Commission Rule 4121-3-34(D)(1)(c).
 However, all examining physicians in file indicate that the Injured Worker is not able to return to her former position of employment, when considering the disability resulting from the allowed physical conditions in this claim.
 The Injured Worker's attending physical medicine and rehabilitation specialist, Gregory M. Thomas, M.D., has indicated in various progress notes and disability statements that he has treated the Injured Worker since 3/12/1997, and that, "I would say that there is no major operation on the horizon for her that is going to enable her to go back to her old job, which no longer exists. She will also not be going back to any type of similar job, where she has to stand up, pull orders, drive forklifts, etc. I believe the claimant is going to put in for Social Security Disability before long." Dr. Thomas also completed numerous disability statements indicating that the Injured Worker was unable to return to her former position of employment, as well as being unable to return to light duty, alternative work, modified work or transitional work.
 This Staff Hearing Officer finds the opinion of Harvey A. Popovich, M.D., as expressed in his narrative report of *Page 12 
 5/3/2006, to be the most persuasive in regard to the Injured Worker's current residual functional capacity in regard to the allowed physical conditions in this claim. After reviewing her medical records and performing a physical examination, on 5/3/2006, Dr. Popovich stated his professional medical opinion that, "Based solely on the impairment resulting from the allowed physical conditions in this claim, with no consideration of the worker's age, education, or work training, this Injured Worker is capable of performing sedentary work, as defined by Industrial Commission Rule 4121-3-34(B)(2)(a)" (emphasis added). This Staff Hearing Officer does find the opinion of Harvey A. Popovich, M.D., to be persuasive. Therefore, it is the finding of this Staff Hearing Officer that the Injured Worker retains the residual functional capacity to perform only sedentary employment, as defined by Industrial Commission Rule 4121-3-34(B)(2)(a). Therefore, this Staff Hearing Officer must now consider the non-medical factors, including the Injured Worker's age, education, work record, and all other relevant factors, such as physical, psychological and sociological, pursuant to Industrial Commission Rule 4121-3-34(B)(2)(b).
 This Staff Hearing Officer notes that the Injured Worker underwent a multi-day vocational evaluation, performed by Carolyn Markle, MRC, CRC, a certified rehabilitation counselor, beginning 11/28/2005. Ms. Markle indicated that one of the Injured Worker's greatest limitations was an inability to sit for two hours, prior to needing to stand and that a minimum of two consecutive hours of sitting are necessary to be considered competitive. Furthermore, Ms. Markle indicated that a Transferable Skills Analysis was performed using the OASYS program, and it produced, "no matches" for any of the four search systems available. Ms. Markle then stated her professional opinion, as a certified rehabilitation consultant and vocational evaluator, that, "It is the professional opinion of this evaluator that she is unemployable, at this time, due to her inability to attend on a regular basis, due to her reported pain. Considering her physical pain and the economy, the only recommendation would be for her to `volunteer' somewhere they will allow for her inconsistent attendance." Ms. Markle went on to state that, "Dawn's work behaviors were within competitive standards, except for her attendance and ability to sit for two hours without standing. Due to her physical limitations, Dawn (and a medical report) reported a need for alternating sitting and standing, as needed. In addition, she called off, "because my back is too *Page 13 
 sore to move" two days (every other day) of the week she was scheduled for a Vocational Evaluation. This attendance is "well below" requirements for competitive employment." The aforesaid vocational expert then closed by stating that, "Therefore, it is the professional opinion of this evaluator that Ms. Dawn Crispen is unemployable at this time, in competitive employment, and no recommendations are suggested. Dawn should be able to do volunteer work, within her restrictions."
 This Staff Hearing Officer does find the opinion of the aforesaid vocational expert, Carolyn Markle, MRC, CRC, to be persuasive.
 In summary, on a medical basis, the Injured Worker retains the capacity to perform only a limited number of sedentary jobs, at best. Vocationally, the Injured Worker is not found to have the potential, from either transferable skills, rehabilitation services or other types of retraining, to adapt to other forms of sustained remunerative employment. It is, therefore, the finding of this Staff Hearing Officer that the Injured Worker is Permanently and Totally Disabled due to the residuals of the allowed conditions in claim number 9[8]-615552.
 Therefore, the Injured Worker is hereby AWARDED Permanent and Total Disability Compensation, pursuant to Ohio Revised Code Section 4123.58(A), from 1/5/2006 through 8/28/2006, and continuing thereafter without suspension unless future facts or circumstances warrant a change, pursuant to Ohio Revised Code Section 4123.52. The starting date of Permanent Total Disability Compensation is based upon the 1/5/2006 Vocational Evaluation Workforce Development Discharge Report from Carolyn Markle, MRC, CRC, and the progress notes of the Injured Worker's attending physical medical and rehabilitation specialist, Gregory M. Thomas, M.D.
 It is further ordered that the above award be allocated as follows: 100% of the award is to be paid under Claim Number 98-615552, as it was the severe disability brought about by the allowed conditions in said claim that permanently removed the Injured Worker from the workforce. The Injured Worker had previously been able to successfully return to the workforce following the industrial injury of 1/27/1988, and that claim is only allowed for contusions, pain, swelling and soft-tissue injuries. *Page 14 
(Emphases sic.)
 {¶ 21} 14. On May 21, 2007, relator, Lear Operations Corporation, filed this mandamus action.
Conclusions of Law: {¶ 22} The commission's nonmedical analysis found in the SHO's order of August 28, 2006, is seriously flawed by reliance upon medical opinions contained in the Markle report that Markle is not competent to render. Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to redo the nonmedical analysis.
 {¶ 23} It is well settled that the commission must rely upon medical evidence in order to determine disability. State ex rel. Yellow FreightSys., Inc. v. Indus. Comm. (1998), 81 Ohio St.3d 56. Neither the commission nor its hearing officers have medical expertise. Id.
 {¶ 24} While the commission is free to accept or reject medical opinions of record in determining disability, it cannot fashion its own medical opinion from a vocational report nor can it accept medical opinions from a vocational expert that is not competent to render medical opinions. See State ex rel. Valentine v. Indus. Comm., Franklin App. No. 02AP-579, 2003-Ohio-1784 (the commission did not have the medical expertise to combine the reports of two different doctors to reach its own conclusion that a psychiatric claim allowance is not work prohibitive).
 {¶ 25} Ohio Adm. Code 4121-3-34 sets forth the commission's rules regarding the adjudication of PTD applications.
 {¶ 26} Ohio Adm. Code 4121-3-34(B)(4) sets forth the following definition: *Page 15 
 "Residual functional capacity" means the maximum degree to which the injured worker has the capacity for sustained performance of the physical-mental requirements of jobs as these relate to the allowed conditions in the claim(s).
 {¶ 27} Ohio Adm. Code 4121-3-34(D) sets forth the commission's guidelines for the adjudication of PTD applications.
 {¶ 28} Ohio Adm. Code 4121-3-34(D)(2) states:
 (a) If, after hearing, the adjudicator finds that the medical impairment resulting from the allowed condition(s) in the claim(s) prohibits the injured worker's return to the former position of employment as well as prohibits the injured worker from performing any sustained remunerative employment, the injured worker shall be found to be permanently and totally disabled, without reference to the vocational factors listed in paragraph (B)(3) of this rule.
 (b) If, after hearing, the adjudicator finds that the injured worker, based on the medical impairment resulting from the allowed conditions is unable to return to the former position of employment but may be able to engage in sustained remunerative employment, the non-medical factors shall be considered by the adjudicator.
 The non-medical factors that are to be reviewed are the injured worker's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed. (Vocational factors are defined in paragraph (B) of this rule).
 (c) If, after hearing and review of relevant vocational evidence and non-medical disability factors, as described in paragraph (D)(2)(b) of this rule the adjudicator finds that the injured worker can return to sustained remunerative employment by using past employment skills or those skills which may be reasonably developed through retraining or through rehabilitation, the injured worker shall be found not to be permanently and totally disabled. *Page 16 
 {¶ 29} The SHO's order purports to make a finding of PTD under Ohio Adm. Code 4121-3-34(D)(2)(b) which requires consideration of the nonmedical factors.
 {¶ 30} Relying upon the medical reports of Drs. Tosi and Clary, the SHO determined that the allowed psychological conditions do not prevent claimant from returning to her former position of employment. Relying upon the medical reports from Dr. Popovich, the SHO determined that the allowed physical conditions do restrict claimant to sedentary work.
 {¶ 31} Following those medical findings regarding claimant's residual functional capacity (sedentary), the SHO announced that he would address the nonmedical factors.
 {¶ 32} After pointing out what the SHO found to be the key points of the Markle report, the SHO found the report to be persuasive. Based primarily on the Markle report, the SHO purports to determine that the nonmedical factors do not permit claimant to perform the sedentary work she is physically capable of performing.
 {¶ 33} The SHO's reliance upon the Markle report is problematical and constitutes an abuse of discretion. While her report presents vocational information, Markle also slips into giving medical opinions she is clearly not competent to render. Markle states that in her "professional opinion," claimant "is unemployable at this time due to her inability to attend on a regular basis due to her reported physical pain." Markle's opinion is entirely that of her own.
 {¶ 34} In fact, Markle's opinion is inconsistent with the opinion of Dr. Popovich upon whom the SHO relied. Dr. Popovich unequivocally opined that claimant was physically capable of performing sedentary work without qualification. That is, Dr. Popovich did not limit the types of sedentary employment claimant could perform. *Page 17 
 {¶ 35} Later in her report, Markle opines that claimant has physical limitations described as "limited lifting and carrying and alternating sitting and standing." Markle accepts claimant's reported need "for alternating sitting and standing, as needed." Markle also suggests that claimant's attendance pattern at Goodwill is to be accepted as an indication of her medical limitations.
 {¶ 36} It is obvious that Markle's conclusions regarding claimant's medical limitations are not based upon acceptance of Dr. Popovich's report. Dr. Popovich simply restricts claimant to sedentary work as it is defined.
 {¶ 37} When the SHO addresses the Markle report, he does not confine his use or reliance upon the report to the nonmedical factors. Instead, the SHO revisits the determination of residual functional capacity and relies upon the medical opinions contained in the Markle report.
 {¶ 38} The SHO further abused his discretion by using the date of the Markle report as the start date for PTD. The PTD start date must be supported by medical evidence. The start date cannot be supported solely by a vocational report.
 {¶ 39} The magistrate further notes relator's contention that the commission was required to dismiss the PTD application when it rejected as unpersuasive the report of Dr. Ward that claimant had submitted in support of her PTD application.
 {¶ 40} Ohio Adm. Code 4121-3-34(C)(1) provides:
 Each application for permanent total disability shall be accompanied by medical evidence from a physician, or a psychologist or a psychiatric specialist in a claim that has been allowed for a psychiatric or psychological condition, that supports an application for permanent and total disability compensation. The medical examination upon which the report is based must be performed within twenty-four months prior to the date of filing of the application for permanent and *Page 18 
 total disability compensation. The medical evidence used to support an application for permanent total disability compensation is to provide an opinion that addresses the injured worker's physical and/or mental limitations resulting from the allowed conditions in the claim(s). Medical evidence which provides an opinion addressing such limitations, but which also contains a conclusion as to whether an injured worker is permanently and totally disabled, may be considered by a hearing officer. A vocational expert's opinion, by itself, is insufficient to support an application for permanent total disability compensation. If the application for permanent total disability is filed without the required medical evidence, it shall be dismissed without hearing.
 {¶ 41} According to relator, Ohio Adm. Code 4121-3-34(C)(1) required the commission to dismiss the PTD application upon determining that the report of Dr. Ward is unpersuasive and will not be relied upon. Relator's reliance upon the commission rule quoted above is misplaced.
 {¶ 42} State ex rel. Kinnear Div., Harsco Corp. v. Indus. Comm.
(1997), 77 Ohio St.3d 258, 265, is instructive. In that case, Kinnear Division of Harsco Corporation challenged a PTD award obtained by Harold W. Druggan. The Kinnear Div. court states:
 Harsco's second argument is that Druggan's application for PTD compensation must be denied because there was no medical evidence attached thereto which could support a finding of PTD. According to Harsco, Dr. Papp's report is not evidence of PTD because he opined only that Druggan was incapable of working as a tool and die maker, and Dr. Guluzian's report is defective because he "continued to repudiate or equivocate his opinion" that Druggan is permanently and totally disabled by simultaneously certifying Druggan as temporarily and totally disabled. Harsco, however, does not dispute that the other medical evidence in the record supports PTD. Instead, it argues that since former Ohio Adm. Code 4121-3-15(G)(1) (1986-1987 Ohio Monthly Record 917, 919) required medical evidence to be submitted in support of a PTD application, the commission "abused its discretion by processing Druggan's unsupported claim, soliciting further medical evidence form a doctor of its own choosing, and setting the claim for hearing." *Page 19 
 Harsco's second argument is fundamentally flawed. First, Harsco points to no rule providing that PTD applications filed without supportive medical evidence are void ab initio. Former Ohio Adm. Code 121-3-15(G)(1) required each PTD application to "be accompanied by medical evidence to support it." 1986-1987 Ohio Monthly Record at 917. It did not require, and Harsco has not cited any authority which requires, that PTD applications must be accompanied by the very medical evidence upon which the commission ultimately relies in granting the application. Absent such authority, there is no reason why the application and accompanying medical evidence cannot trigger the commission's review, allowing the commission to ultimately rely on whatever evidence comes before it at the hearing. Thus, irrespective of whether the evidence attached to Druggan's application supported his claim, the commission had before it some medical evidence to support its decision that Druggan was permanently and totally disabled.
(Emphases sic.)
 {¶ 43} While Ohio Adm. Code 4121-3-34(C)(1) requires the PTD applicant to submit medical evidence "that supports an application for permanent and total disability compensation," relator never moved for dismissal of the PTD application on grounds that Dr. Ward's report fails to support the PTD application under the commission rule. Given relator's failure to so move, it cannot here contend or suggest that the commission abused its discretion in failing to dismiss the application before processing it. State ex rel. Koza v. Indus. Comm., Franklin App. No. 02AP-903, 2003-Ohio-3434, at ¶ 1-7, 117-125. Moreover, it is clear that the commission rule does not authorize commission dismissal of the PTD application on grounds that the commission determined not to rely upon the medical evidence submitted by the PTD applicant.
 {¶ 44} Regarding relator's contention that the commission abused its discretion by allocating 100 percent of the award to the 1998 claim, that issue is not ripe for review *Page 20 
here given that the commission has not yet completed its task of appropriately adjudicating the PTD application.
 {¶ 45} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of August 28, 2006 awarding PTD compensation and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates the PTD application. *Page 1