[Cite as *State ex rel. Daimler Chrysler Corp. v. Indus. Comm.*, 2014-Ohio-2072.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, ex rel.<br>Daimler Chrysler Corp., | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | | No. 13AP-306 |
| | : | |
| The Industrial Commission | | (REGULAR CALENDAR) |
| of Ohio and Michael A. Liles, | : | |
| | | |
| Respondents. | : | |

D E C I S I O N

Rendered on May 15, 2014

*Coolidge Wall Co., L.P.A.*, *David C. Korte, Michelle D. Bach,* and *Joshua R. Lounsbury*, **for relator.**

*Michael DeWine*, **Attorney General, and** *LaTawnda N. Moore,* **for respondent Industrial Commission of Ohio.**

*Larrimer and Larrimer*, **and** *Thomas L. Reitz*, **for respondent Michael A. Liles.**

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

CONNOR, J.

{¶ 1} Relator, Daimler Chrysler Corp., brings this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its October 5, 2012 order awarding permanent total disability compensation ("PTD") to respondent, Michael A. Liles ("claimant").

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who rendered a decision and recommendation that includes findings of fact and conclusions of law, which is appended

hereto. The magistrate concluded that the commission abused its discretion in awarding PTD compensation when it expressly relied on the report of a vocational specialist that: (1) contains a medical opinion that the expert is not competent to render, and (2) conflicts with the opinion of the medical expert upon which the commission also relied. Specifically, the vocational expert opined that the pain medication prescribed to claimant effectively prevented him from participating in the training program needed to prepare him for sedentary work. Accordingly, the magistrate recommended that we issue the requested writ of mandamus.

{¶ 3} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.,* 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986).

{¶ 4} Claimant sets forth the following three objections to the magistrate's decision:

> Objection No. 1: The magistrate erred by holding that the Commission must rely on medical expertise to conclude that narcotic medication will hamper the ability to complete a retraining program.
>
> Objection No. 2: The magistrate erred by holding that *Unger*[*v. Indus. Comm.,* 70 Ohio St.3d 672 (1994)] and [*State ex rel. Paraskevopoulus v. Indus. Comm.,* 83 Ohio St.3d 189 (1998)] stand for the legal precedent that effect of medication generally requires medical expertise.
>
> Objection No. 3: The magistrate erred by holding that the Commission based its decision after conducting its own assessment of the claimant's pain.

{¶ 5} In each of his objections claimant argues, for a slightly different reason, that the magistrate erred in concluding that the commission abused its discretion by relying on

the report of a vocational expert in granting PTD compensation. For the reasons that follow, we agree with the magistrate.

{¶ 6}   In our view, this court's decision in *State ex rel. Lear Operations Corp. v. Crispen,* 10th Dist. No. 07AP-428, 2008-Ohio-5256, disposes of the objections. In *Crispen*, the commission expressly relied on the report of a medical doctor who opined that claimant could perform sedentary work. However, in concluding that claimant was unable to perform sustained remunerative employment, the commission cited the report of a vocational expert who opined that claimant's pain from the allowed condition prevented her from performing sedentary work. We granted a writ of mandamus ordering the commission to vacate its award of PTD compensation for the stated reason that the commission improperly relied upon a medical opinion rendered by a vocational expert who was not competent to render such an opinion. *Id.* at ¶ 5.

{¶ 7}   The vocational expert relied on by the commission in this case is neither a "licensed health professional authorized to prescribe drugs," nor is he engaged in the "practice of pharmacy." *See* R.C. 4729.01(A) and (I). Pursuant to our reasoning in *Crispen,* the commission abused its discretion when it relied on the opinion of a vocational expert regarding the deleterious effects of prescribed pain medication. The vocational expert was simply not qualified to render a medical opinion. *Id.*

{¶ 8}   Moreover, the medical expert expressly relied upon by the commission opined that claimant was capable of performing sedentary work. The medical expert was clearly aware of the effects of the prescribed pain medication at the recommended dosage. By ruling that claimant was unable to participate in sustained remunerative employment, the commission concluded that the deleterious effects of pain medication, even when taken in the prescribed dosage, rendered claimant incapable of participating in the

training program needed to prepare him for sedentary work. The commission does not have the medical expertise necessary to reach such a conclusion. Indeed, while it is well-settled law that the commission is the expert on non-medical factors, including vocational evidence, *State ex rel. Jackson v. Indus. Comm.,* 79 Ohio St.3d 266 (1997), it is just as well-settled that neither the commission nor its hearing officers have medical expertise. *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, **81 Ohio St.3d 56, 58 (1998).**

{¶ 9}   In short, for the reasons set forth by the magistrate and the additional reasons set forth herein, the objections shall be overruled.

{¶ 10} Following an independent review of the magistrate's decision and the objections filed by claimant, we find that the magistrate has determined the pertinent facts and properly applied the relevant law. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  For the reasons set forth in the magistrate's decision and those expressed herein, claimant's objections are overruled.

{¶ 11} We hereby issue a writ of mandamus ordering the commission to vacate its October 5, 2012 order awarding permanent total disability compensation to claimant and to issue a new order denying such compensation.

*Objections overruled; writ granted.*

KLATT and T. BRYANT, JJ., concur.

T. BRYANT, J., retired, of the Third Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State of Ohio, ex rel.                      :
Daimler Chrysler Corp.,

                                            :

        Relator,                         No.  13AP-306

                                            :

v.                                          (REGULAR CALENDAR)

                                            :

The Industrial Commission
of Ohio and Michael A. Liles,               :

        Respondents.                    :

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on December 20, 2013

---

*Coolidge Wall Co., L.P.A.*, *David C. Korte, Michelle D. Bach,* and *Joshua R. Lounsbury*, for relator.

*Michael DeWine*, Attorney General, and *LaTawnda N. Moore,* for respondent Industrial Commission of Ohio.

*Larrimer and Larrimer*, and *Thomas L. Reitz*, for respondent Michael A. Liles.

---

### IN MANDAMUS

{¶ 12} In this original action, relator, Daimler Chrysler Corp. ("relator" or "Chrysler") requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the October 5, 2012 order of its staff hearing officer ("SHO") that awards permanent total disability ("PTD") compensation to respondent, Michael A. Liles, and to enter an order denying the compensation.

Findings of Fact:

{¶ 13} 1. Michael A. Liles ("claimant") has two industrial claims that arose in the course of his employment as a maintenance electrician with relator, a self-insured employer under Ohio's Workers' Compensation laws.

{¶ 14} 2. On July 14, 1988, claimant injured his left forearm and lower back when he climbed down from a machine and slipped and fell on oil on the floor. The industrial claim (No. 981403-22) is allowed for:

> Abrasion, left forearm, lumbosacral sprain/strain; intervertebral disc syndrome; herniated lumbar disc L4-5, bilateral; herniated disc L5-S1; lumbar post-laminectomy syndrome; arachnoiditis.

{¶ 15} 3. On August 31, 1999, claimant again slipped on oil and fell while working on a plastic injection machine. The industrial claim (No. 99-511558) is allowed for "sprain lumbar region."

{¶ 16} 4. On September 16, 2007, Thomas Nguyen, M.D., wrote to claimant's counsel:

> After reviewing the history profile of Mr. Michael Liles' medical injury for the past 18 months, I agree with your assessment that Mr. Liles has a permanent injury with regard to his lumbar spine. He has shown no significant clinical change or improvement in the past 18 months. Due to his chronic back pain and difficulty with range of motion, it is unlikely that he will be able to resume any type of vocation requiring physical assertions [sic].

{¶ 17} 5. On October 2, 2007, claimant filed an application for PTD compensation.

{¶ 18} 6. The PTD application form asks the applicant to provide information regarding his educational status. On the form, claimant indicated that the 9th grade was the highest grade of school he had completed and this occurred in 1965. Although he did not graduate from the high school that he attended, claimant did receive a certificate for passing the General Educational Development ("GED") test. Claimant has not gone to a trade or vocational school.

{¶ 19} The PTD application form poses three questions to the applicant: (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?" Given a choice of "yes," "no," and "not well," claimant selected the "yes" response to all three queries.

{¶ 20} 7.  The PTD application form also asks the applicant to provide information regarding  his work history.  Claimant indicated that he was employed as a "Maintenance Electrician" at an "Auto Parts Factory" from August 1983 to March 2003.

{¶ 21} 8.  The PTD application form also asks the applicant to provide information regarding military experience.  Claimant indicated that he was a "Radio Operator" from February 1968 to October 1970.

{¶ 22} 9.  The application form poses six questions to the applicant regarding the job titles he has held.  Regarding the job title of "Maintenance Electrician," claimant responded as follows to the following six questions:

> [One] Your basic duties: Maintain and repair all electrical devices in buildings and machinery [sic][.]
>
> [Two] Machines, tools, equipment you used: Factory trucks, switch gear light bulbs, switches, limit switches, control panels, all electrical devices[.]
>
> [Three] Exact operations you performed: Replace and or repair all electrical devices[.]
>
> [Four] Technical knowledge and skills you used: 8 yrs. experience in electrical field[.]
>
> [Five] Reading / Writing you did: [Left Blank]
>
> [Six] Number of people you supervised: [Left Blank]

{¶ 23} 10.  On November 6, 2007, at relator's request, claimant was examined by orthopedic surgeon William E. Swan, Jr., M.D.  In his three-page report, dated December 3, 2007, Dr. Swan wrote:

> **Physical examination:** Mr. Liles was examined on the 6th of November 2007. He was an alert, cooperative 59-year-old gentleman who appears to be older than his stated age. He came to the office with a cane which he used. When attempting to walk, he limps and in addition, he walks with an impaired gait and he cannot walk on either of his toes or heels. The mobility of his back is extremely limited. The lower extremities; he has marked atrophy, but he has palpable pulses.
>
> By measurement, the atrophy of his legs are symmetrical. Sensation is decreased to both lower extremities,

especially below the knee. His motor function is about four over five. His reflexes to both lower extremities are absent.

By physical examination, he has marked limitation of motion of his back. His straight leg raising was positive on the left at 20 degrees and on the right at 25 degrees.

My impression is that Mr. Liles has chronic low back pain, especially at L4-5 and L5-S1 and 2) He has chronic arachnoiditis in the lumbar spine, 3) he has low back syndrome, 4) he is post spinal stenosis.

The patient also has serious other medical problems which affect his overall condition and these include: diabetes, diabetes with peripheral neuropathy, pancreatitis and arteriorscleroic vascular disease.

The patient is disabled to my interpretation. From his chronic radiculitis of the lower extremity, he has a 15% whole person functional impairment.

{¶ 24} 11. On February 27, 2008, at the commission's request, claimant was examined by Angel M. Roman, M.D. In his five-page narrative report, Dr. Roman wrote:

On April 22, 2002, report of Dr. Scott West, the patient with radiculopathy recommended a myelogram and that was pertaining to admission to the hospital for that.

On April 22, 2002, lumbar myelogram Dayton, Ohio, Grandview/Southview Hospital soft tissue densities extending posterior from the disk space at L4-L5 and L5-S1 with degenerative changes as well as postsurgical changes at L4-L5 and L5-S1. Final diagnosis was spinal stenosis with advanced degenerative disk disease L4-L5 and L5-S1, surgery performed was posterior decompression lumbar laminectomy with pedicle screw fixation L4-L5 and L5-S1, posterior lumbar interbody fusion, posterolateral transverse process from L4-L5 and L5-S1 with autograft iliac crest harvest.

Medical history is also obtained from the patient where he describes pain in the lower back and legs made worse by walking and made better by sitting. Missed about five years of work because of this, has had this problem since

1988. He has had three back surgeries the last one by Dr. West in Dayton, Ohio.

* * *

**CURRENT MEDICATIONS:** Ibuprofen 800 mg, Neurontin 600 mg, morphine 30 mg, diclofenac 100 mg, simvastatin 20 mg, aspirin 81 mg, Avandamet 2/500 mg, Lyrica 50 mg, and lisinopril 10 mg.

**IMPRESSION:** This is a patient with longstanding chronic pain. He has evidence for significant left lower extremity radiculopathy with weakness as well as pain and antalgic gait pattern.

Therefore, under matching the physical examination with the review of records this tends to confirm his accepted diagnoses, which are:
[One] Left forearm abrasion. This is fully healed with a 0% impairment rating.
[Two] Lumbosacral sprain/strain. This is a muscular sprain/strain, which is resolved and now receives a 0% rating.
[Three] Sprain lumbar region. This also has resolved with a 0% rating.
[Four] Intervertebral disk syndrome. This continues with chronic pain in the lumbar spine.
[Five] Herniated disk L4-L5 bilaterally, herniated disk L5-S1. These required surgery and now he continues with chronic pain and postlaminectomy syndrome with lower extremity radiculopathy affecting the left leg primarily.

Arachnoiditis is a nerve root condition, which is a consequence of his surgeries and multiple intervention of the lumbar spine. This also results in the lumbar radiculopathy that we have documented affecting the left side primarily L4 and L5 nerve roots to the left side.

Therefore, he does receive an impairment rating for these conditions of the lower back with chronic pain status post two disk herniations with consequent arachnoiditis and left lower extremity radiculopathy, which is part of the arachnoiditis. He has reached <u>maximal</u> medical improvement with all of the conditions listed as accepted. His impairment rating using the fifth edition AMA guidelines is he receives a 25% impairment rating using DRE lumbar category 5, which is on page 387. This is for

the patients who have criteria of both DRE lumbosacral category 3 and 4, which is both radiculopathy and alternation of motion segment integrity. The loss of motion segment integrity can be due to fusion surgical in nature, which is what this patient has.

Therefore, he qualifies for 25% whole impairment rating DRE category lumbar 5 page 387 fifth edition.

(Emphasis sic.)

{¶ 25} 12. On February 28, 2008, Dr. Roman completed a Physical Strength Rating form. On the form, Dr. Roman indicated by his mark that claimant is capable of sedentary work. In the space provided to respond to the query "[f]urther limitations, if indicated," Dr. Roman wrote:

No overtime. Must take medications as prescribed.

{¶ 26} 13. At the request of claimant's counsel, rehabilitation specialist John P. Kilcher, prepared an 11-page vocational report dated May 2, 2008. In his report, Kilcher states:

### MEDICAL HISTORY

* * *

Angel M. Roman, M.D., in his February 2008 medical report he prepared on behalf of the Industrial Commission of Ohio, indicated in the medical history obtained from the patient, Mr. Liles describes pain in the lower back and legs made worse by walking and made better by sitting. He missed about five years of work because of this, and has had this problem since 1988. He has had three back surgeries the last one by Dr. West in Dayton, Ohio. Current medications include: Ibuprofen 800 mg, Neurontin 600 mg, morphine 30 mg, Diclofenac 100 mg, Simvastatin 20 mg, aspirin 81 mg, Avandamet 2/500 mg, Lyrica 50 mg, and Lisinopriol 10 mg.

Dr. Roman's impression is that this is a patient with longstanding chronic lumbar pain. He has evidence for significant left lower extremity radiculopathy with weakness as well as pain and antalgic gait pattern.

* * *

## VOCATIONAL HISTORY

Mr. Liles reported that he completed the 9th grade of school in 1965, which was approximately 43-years ago, and he obtained a General Educational Development (GED) certificate. The claimant was a member of the U.S. military from February 1968 to October 1970, which was over 37 years ago and he worked as a Radio Operator. Mr. Liles did not complete any other type of formal or technical training with the exception of that which he acquired on-the-job. The claimant also reported he can read, write, and do basic math.

## VOCATIONAL ANALYSIS

| PERIOD EMPLOYED | EMPLOYER | JOB TITLE D.O.T. CODE |
|---|---|---|
| 08/1983 to 10/2002 | Daimler Chrysler Corporation | Maintenance Repairer, Industrial 899.261-014 |

Mr. Liles was employed for approximately 19-years as a Maintenance Electrician and his duties involved maintaining and repairing electrical devices in the buildings and for machinery. For this type of a job, a 12th grade education is indicated and it is classified as "Skilled" as it requires 4-10 years of vocational preparation to become proficient. The job has a Physical Demand Strength Rating of Heavy Work, which is defined by the **D.O.T.** as :

"Exerting 50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Medium Work."

### TRANSFERABLE SKILLS

* * *

For the purpose of identifying Mr. Liles' Residual Functional Capacity as it relates to transferable skills, I

utilized Dr. Roman's opinion that the injured worker is capable of physical work activity at the Sedentary Work level.

Mr. Liles, from his past jobs, would have acquired the following skills:

| JOB TITLE | SKILL LEVEL | SKILLS |
|---|---|---|
| Maintenance Repairer Industrial | Skilled | -Ability to maintain & repair electrical devices for buildings and machinery<br>-Ability to use tools & Equipment to maintain and repair electrical devices |

Mr. Liles' job is classified at the "Skilled" level and he would have acquired skills from this work activity; however, it is my opinion the skills were specialized as that he operated.

Due to this factor, and when further taking into consideration Mr. Liles' reduced Residual Functional Capacity, it is my opinion the claimant would not have acquired any transferable or marketable skills and would be limited to obtaining a job, if he was physically capable, which would be classified as "Unskilled."

Based on the fact Mr. Liles did not acquire any transferable or marketable skills and when further taking into consideration his reduced Residual Functional Capacity, it is my opinion the skills the claimant would have acquired from his past job could not be reasonably developed to return him to sustained, remunerative employment.

I am also of the opinion that when taking into consideration Mr. Liles' age of 59-years, he could not reasonably develop new skills that would return him to the labor force. My rational for this is based on my experience working as a Regional Coordinator for the Industrial Commission's Rehabilitation Division for approximately ten years and over nine years in private practice as a Case Manager providing rehabilitation services for industrially injured workers throughout the State of Ohio. It has always been the policy that a

claimant of Mr. Liles' age would not be qualified to participate in a formal retraining program.

It is my opinion that although Mr. Liles' past job as a Maintenance Repairer is classified as "Skilled," the skills associated with this job is analogous with physically exertional work activity and mechanical abilities that does not require a high level of intellectual ability. This is evident as the job had the Physical Demand Strength Rating of Heavy Work and it only required a 12th grade education. Due to this, Mr. Liles would not have the ability to develop new skills that would be associated with a job that could be performed at his reduced Residual Functional Capacity, as by the very nature of this type of work activity, it requires intellectual ability in lieu of physical and mechanical ability.

### HIERARCHY OF EMPLOYABILITY

* * *

[Three] <u>Assist the claimant in finding employment in a related industry or any other industry</u>

**Based on Mr. Liles' reduced Residual Functional Capacity along with the other debilitating factors to include the chronic low back pain that he is experiencing; not having any transferable or marketable skills to utilize to obtain employment, along with his inability to reasonably develop new skills that would return the claimant to the labor force, while being 59-years of age; it is my opinion Mr. Liles' potential to be employed is eliminated. (Note: This will be addressed in more depth in the "Conclusions" section of this report).**

[Four] <u>Retraining</u>

**It is my opinion although retraining may provide marketable skills, this would not be a realistic consideration based on the factors that were identified in number three above, and which would preclude Mr. Liles' employability following the completion of a retraining program. Additionally, when taking into consideration the chronic low back pain Mr. Liles is experiencing it**

**is not feasible that he could successfully complete a formal retraining program.**

## CONCLUSIONS

* **

[Three] Mr. Liles completed the 9th grade of school approximately 43-years ago, and he obtained a GED. The claimant was a member of the U.S. military over 37 years ago working as a Radio Operator. Mr. Liles did not complete any other type of formal or technical training with the exception of that which he acquired on-the-job. The claimant can read, write, and do basic math.

**Note: It is my opinion this level of education would not provide Mr. Liles with the skills that would allow the claimant to obtain a job that would be within his reduced Residual Functional Capacity.**

[Four] Mr. Liles does not have any transferable or marketable skills that he could utilize to obtain employment; and therefore, he would be limited to obtaining a job, if he were physically capable, that would be classified as "Unskilled." Additionally, the skills the claimant would have acquired from his past jobs could not be reasonably developed to return him to sustained, remunerative employment; nor, could Mr. Liles reasonably develop new skills that would return him to the labor force.

[Five] Mr. Liles has not worked for over 5-years and his job was physically exertional. These factors would prove to be detrimental in the claimant's ability to be employed.

[Six] Mr. Liles is 59-years of age and is considered a "Person of Middle Age." This would be detrimental in his ability to obtain employment as it is unlikely that the claimant would be competitive with younger applicants. Age becomes a significantly limiting factor when an industrially injured worker such as Mr. Liles would attempt to be employed when taking into consideration all of the vocationally significant factors that I have identified throughout this report.

Note: In relation to Mr. Liles' age, given the presence of a work disability, the probability of this claimant being employed is drastically reduced in comparison to a person who does not have a work disability.

**Note: I would further point out Mr. Liles' age in and of itself would not preclude this claimant from being employed, and even if he were a younger individual with the impairments and vocationally significant deficits that he possesses, it is my opinion the claimant would not be employable.**

**It is my opinion based on his reduced Residual Functional Capacity, the only possibility of Mr. Liles' returning to employment in a job that would be compatible with his physical limitations would be through a formal retraining program. As noted previously in this report, when taking into consideration the chronic low back pain Mr. Liles is experiencing it is not feasible that he could successfully complete a formal retraining program.**

**In conclusion, based on all of the vocationally significant factors that I have identified throughout this report and when only taking into consideration the impairments that are directly related to the allowed conditions in the industrial claims, it is my opinion Mr. Liles is precluded from performing any type of sustained, remunerative employment on a full-time or part-time basis.**

## REHABILITATION POTENTIAL

The goal of vocational rehabilitation is return-to-work. Drs. Roman and Wunder are of the opinion Mr. Liles' condition has reached Maximum Medical Improvement. This would indicate the clinical condition is not likely to improve with further active medical treatment or surgical intervention and medical maintenance care only is warranted. This would also indicate that any further attempt to provide rehabilitation services would not be beneficial in returning Mr. Liles to work. Additionally, as indicated previously in this report, when taking into consideration the chronic low back pain the claimant is

> experiencing it is not feasible that he could successfully complete a formal retraining program.
>
> **Based on these factors, it is this Rehabilitation Specialist's opinion Mr. Liles is not an appropriate candidate for a rehabilitation program with a return-to-work goal.**

(Footnotes omitted; Emphasis sic.)

{¶ 27} 14. Following a June 20, 2008 hearing, an SHO issued an order awarding PTD compensation starting September 16, 2007 based upon the September 16, 2007 report of Dr. Nguyen and the November 6, 2007 (December 3, 2007) report of Dr. Swan. The SHO found that it was not necessary to consider the non-medical factors.

{¶ 28} 15. On November 18, 2008, relator filed in this court a mandamus action that challenged the SHO's order of June 20, 2008.

{¶ 29} 16. On November 3, 2009, this court issued its decision and judgment entry that granted a limited writ of mandamus ordering the commission to vacate its order finding claimant to be permanently and totally disabled solely on the basis of a medical condition. As indicated in this court's written decision, this court found that the reports of Drs. Nguyen and Swan failed to provide some evidence that claimant is unable to perform sustained remunerative employment solely as a result of one or more allowed conditions of the industrial claims. *State ex rel. DaimlerChrysler Corp. v. Indus. Comm.,* 10th Dist. No. 08AP-1017, 2009-Ohio-5778, *affirmed* 130 Ohio St.3d 339, 2011-Ohio-4895.

{¶ 30} 17. This court's November 3, 2009 judgment entry states in part:

> We return this matter to the commission for further consideration. In doing so, we do not suggest the commission cannot seek clarification of the reports submitted; nor do we suggest claimant is not totally and permanently disabled based on an analysis that includes the nonmedical factors. We conclude only that the evidence the staff hearing officer relied on is not some evidence on which the commission could base an order finding claimant to be permanently and totally disabled solely on the basis of his medical condition.

{¶ 31} 18. Claimant appealed as of right this court's November 3, 2009 judgment to the Supreme Court of Ohio.

{¶ 32} 19. On September 28, 2011, the Supreme Court of Ohio affirmed this court's judgment.

{¶ 33} 20. On May 10, 2012, an SHO mailed an order that acknowledges this court's writ of mandamus in case number 08AP-1017. The SHO's order states:

> In accordance with the Writ, it is ordered that the order of the Staff Hearing Officer dated, 06/20/2008, findings mailed 06/25/2008, which granted the claimant Permanent and Total Disability Compensation solely on the basis of his medical conditions, is VACATED.
>
> Further, this claim is to be referred to the Hearing Administrator for appropriate review and to schedule a de novo hearing before a Staff Hearing Officer to redetermine the merits of the Injured Worker's IC-2 Application for Permanent Total Disability filed on 10/02/2007.
>
> In accordance with the court's instruction, the Staff Hearing Officer is to also consider and evaluate the non-medical factors in making their determination of whether or not the Injured Worker is Permanently and Totally Disabled.
>
> The hearing officer is to issue an order which either grants or denies the IC-2 application filed on 10/02/2007, cite the evidence which is the basis of the decision and provide an explanation for the decision in accordance with State ex rel. Mitchell v. Robbins & Myers, Inc. (1984), 6 Ohio St.3d 481.

{¶ 34} 21. On June 16, 2012, the Columbus Hearing Administrator issued a compliance letter:

> Pursuant to the Court order, the parties are permitted to seek clarification of the medical reports submitted by the Employer, from Dr. Swan, and the Injured Worker, Dr. Nguyen.
>
> The hearing on the issue of the Injured Worker's application for permanent total disability will not be scheduled until after, August 10, 2012 to allow time for the submission of the clarification of the medical reports.

22. On August 2, 2012, Dr. Nguyen wrote to claimant's counsel:

Based on the most recent evaluation of Michael Liles on May 29, 2012, I conclude that he is totally disabled from his injury he sustained on July 14, 1988. Mr. Liles continues to have tremendous pain with severe bodily limitation.

23. On August 27, 2012, Dr. Swan wrote to relator's counsel:

I reviewed your letter dated July 13, 2012. The functional impairment given Mr. Liles in my December 3, 2007 report was permanent. One can be disabled, unable to perform his duties, with a functional impairment much less than 100%. With his functional impairment of 15%, he will be unable to perform many of the duties requiring bending, stooping and lifting. In addition, many work places will not allow a worker to return while taking narcotics such as Morphine 30mg BID, which Mr. Liles was taking when I saw him on November 6, 2007.

I consider Mr. Liles unable to perform his heavy labor in the workplace requiring bending, stooping and lifting over 5 pounds. A repeat evaluation can be provided if it would be helpful to you and Mr. Liles.

{¶ 35} 24. Following an October 5, 2012 hearing, an SHO issued an order granting the PTD application filed on October 2, 2007 and awarding PTD compensation starting August 2, 2012. The SHO's order of October 5, 2012 explains:

This order is based on the medical report of Dr. Roman and the vocational report of Mr. Kilcher.

The injured worker has incurred two industrial injuries. The first and most serious injury occurred in 1988. On 07-14-1988, the injured worker slipped on oil and beads and his feet went out from under him causing him to land on his buttocks. The injured worker has undergone three low back surgeries due to this claim and has chronic low back pain as a result of this injury per medical reports on file. The second and last injury occurred on 08-03-1999 wherein the injured worker reinjured his low back when he slipped and fell. This claim was allowed for a lumbar sprain with all treatment being conservative in this claim. The injured worker reportedly last worked in October of 2002.

Based on Dr. Roman's report, it is found that the injured worker has the residual ability to perform sedentary level work, not involving any overtime, and the injured worker must continue to take his medications as prescribed. Consequently, because the injured worker does have residual employment capability, his disability factors are next reviewed to determine what impact those factors have on the injured worker's overall reemployment potential.

In that light, the record reveals the following disability factors. The injured worker was 59 at the time the original IC-2 application was filed on 10-02-2007, the injured worker has his GED certificate and his prior work history was as a maintenance electrician repairer.

The injured worker's age at the time of the filing of his IC-2 application, 59, would make the injured worker at that time a person of late middle age. At this age, the injured worker would still have a limited amount of time to obtain or be retrained for sedentary level work. However, at this age, the injured worker would probably learn new work skills or adjust to new work environments more slowly than younger workers, and to that extent his age would be a disadvantage. For these reasons his age is found to be a neutral factor.

The injured worker's education, a GED, is also found to be a neutral vocational factor. The injured worker does possess basic literacy/math skills, however, he does not possess any vocational training beyond high school and he does not possess a two or four year college degree. Therefore, it is apparent that the injured worker's education does not form the basis for immediately obtaining a sedentary level job as these types of jobs normally require training beyond the high school level. Therefore, the injured worker's education is adequate for the possession of basic literacy/math skills, but it has not provided the injured worker with the type of background usually associated with technical or professional sedentary positions. On this basis, injured worker's education is found to be a neutral vocational factor.

The injured worker's job history was as indicated that as a maintenance electrician repairer. This was a physically demanding job clearly outside of the sedentary level.

Therefore, the injured worker would not have immediately transferable skills for sedentary level work based on his prior work background. The fact would indicate that the injured worker's job history is not a positive vocational factor.

Because the injured worker does not based on his age, education and work experience have immediately transferable skills commensurate with sedentary employment, the only way he could obtain sedentary employment is through retraining.

Regarding retraining, Mr. Kilcher specifically noted in his vocational report that the injured worker by age and work experience would not be qualified to successfully complete a formal retraining program such that the injured worker would be qualified for sedentary level work. Mr. Kilcher pointed out that the injured worker's chronic low back pain is a factor meriting against the injured worker successfully completing a formal retrained [sic] program. The Staff Hearing Officer also notes that Dr. Roman stated that the injured worker was to continue to take his medications as prescribed and per injured worker's counsel at hearing, this included narcotic medication. The taking of narcotic medication would obviously hamper the injured worker in any effort to complete a retraining program and to perform any type of sedentary job duties.

Because the injured worker is found not presently able to perform sedentary level work or to develop the work skills necessary to be qualified for sedentary level work, and sedentary level work is the only level of work he is physically able to perform, the injured worker is found to be permanently and totally disabled.

One hundred percent of the permanent total benefits are to be paid in claim 981403-22 as it is this claim that per medical reports on [file] has caused the injured worker to be totally disabled. The start of 08-02-2012 is based on Dr. Nguyen's report of such date. This report is the earliest medical evidence of unequivocal permanent total impairment.

{¶ 36} 25. On January 8, 2013, relator moved for a declaration of an overpayment of PTD compensation.

{¶ 37} 26. Following an April 4, 2013 hearing, an SHO issued an order finding that PTD compensation was overpaid from September 16, 2007 through August 1, 2012. The SHO's order explains:

> It is the order of the Staff Hearing Officer that an overpayment is granted for Permanent Total Disability benefits paid from 09/16/2007 through 08/01/2012. The overpayment is to be recouped pursuant to the non-fraud provisions of R.C. 4123.411 (K).
>
> The Injured Worker was previously awarded permanent total disability benefits, start date 09/16/2007, by Staff Hearing Officer order issued 06/25/2008. That order was vacated by Industrial Commission order, issued 05/10/2012. A de novo hearing was conducted on 10/05/2012 to consider the IC-2 permanent total disability application, filed on 10/02/2007. By order issued 10/27/2012, permanent total disability benefits were granted, start date 08/02/2012.
>
> The Self-Insuring Employer had paid permanent total disability benefits from 09/16/2007 through 08/01/2012 based on the Staff Hearing Officer order issued 06/25/2008. As that order was vacated and the subsequent award of benefits did not begin until 08/02/2012, the benefits paid from 09/16/2007 through 08/01/2012 are overpaid.

{¶ 38} 27. On April 10, 2013, relator, Daimler Chrysler Corp., filed this mandamus action.

Conclusions of Law:

{¶ 39} Undisputedly Kilcher and the commission lack medical expertise. *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, 81 Ohio St.3d 56, 57 (1998).

{¶ 40} Because the commission improperly relied upon medical opinions that Kilcher and the SHO lacked the competency to render, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 41} In *State ex rel. Lear Operations Corp. v. Crispen,* 10th Dist. No. 07AP-428, 2008-Ohio-5256, this court, speaking through its magistrate, states:

> While the commission is free to accept or reject medical opinions of record in determining disability, it cannot fashion its own medical opinion from a vocational report

> nor can it accept medical opinions from a vocational
> expert that is not competent to render medical opinions.

*Id.* at ¶ 24.

{¶ 42} In his vocational report, Kilcher opines that a "formal retraining program" is "not feasible" because of claimant's "chronic low back pain" which necessitates use of "prescription medication."  In his report, Kilcher lists the "[c]urrent medications" recognized by Dr. Roman.   "[M]orphine 30 mg" is among the medications listed.

{¶ 43} In his order of October 5, 2012, the SHO relies upon the Kilcher opinion that "chronic low back pain is a factor meriting against the injured worker successfully completing a formal retrained [sic] program."  Noting that Dr. Roman stated that claimant "was to continue to take his medications as prescribed," the SHO rendered his own conclusion that taking narcotic medication "would obviously hamper [claimant] in any effort to complete a retraining program and to perform any type of sedentary job duties."

{¶ 44} Pain assessment and the prescribing of medication for the treatment of pain are matters generally requiring medical expertise.  *See State ex rel. Unger v. Indus. Comm.*, 70 Ohio St.3d 672 (1994); *State ex rel. Paraskevopoulos v. Indus. Comm.*, 83 Ohio St.3d 189 (1998).

{¶ 45} Kilcher necessarily conducted his own assessment of claimant's low back pain when he opined that the low back pain and the medication used to treat it preclude a formal retraining program.  Likewise, the SHO necessarily conducted his own assessment of claimant's pain and the medication use associated with it when the SHO found that the medication would obviously hamper a retraining program.

{¶ 46} Kilcher stepped outside of his area of vocational expertise into the area of medical opinion.  Also, the SHO impermissibly rendered a medical opinion that he is not competent to do.

{¶ 47} For its determination of residual functional capacity, the commission, through its SHO, relied exclusively upon the February 27, 2008 report of Dr. Roman. In his five-page narrative report, Dr. Roman explains his assessment of a 25 percent

impairment. However, no specific medical restrictions are listed in the narrative report.

{¶ 48} On the Physical Strength Rating form, Dr. Roman indicates by his mark that the industrial injuries permit sedentary work. While Dr. Roman indicates "[n]o overtime" no other restrictions are indicated.

{¶ 49} Significantly, Dr. Roman does not indicate or even suggest that claimant's use of prescribed narcotic medication in any way restricts his ability to perform sedentary work. Significantly, Dr. Roman does not indicate or suggest that the industrial injuries would hamper or prevent vocational training aimed at placing claimant in a sedentary work position.

{¶ 50} Thus, commission reliance upon Kilcher's opinion is inconsistent with its reliance upon Dr. Roman's report, as relator points out here. Also, the SHO's finding that any retraining program would be hampered by claimant's use of narcotic medication is inconsistent with reliance upon Dr. Roman's report.

{¶ 51} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate the October 5, 2012 order of its SHO that awarded PTD compensation, and to enter an amended order in a manner consistent with this magistrate's decision that either grants or denies the PTD application.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**
Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).